UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

EUGENE DAVIS,

           Plaintiff,

    v.

ODN I GMBH, ODEBRECHT DRILLING NORBE SIX GMBH, ODN TAY IV GMBH, ODEBRECHT DRILLING NORBE EIGHT GMBH, ODEBRECHT DRILLING NORBE NINE GMBH, ODEBRECHT OFFSHORE DRILLING FINANCE LIMITED, ODEBRECHT DRILLING NORBE VIII/IX LTD., OCYAN S.A. F/K/A ODEBRECHT OLEO E GAS S.A., DRILLCO HOLDING LUX S.A., FORESEA HOLDING S.A., CONTRARIAN CAPITAL MANAGEMENT, LLC, and JOSHUA WEISSER,

           Defendants.

---------------------------------------------------------X

Case No.:   1:24-cv-1463

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Eugene Davis, by his counsel, Moses & Singer LLP, for his complaint against defendants ODN I GmbH, Odebrecht Drilling Norbe Six GmbH, ODN Tay IV GmbH, Odebrecht Drilling Norbe Eight GmbH, Odebrecht Drilling Norbe Nine GmbH, Odebrecht Offshore Drilling Finance Limited, Odebrecht Drilling Norbe VIII/IX Ltd., Ocyan S.A. f/k/a Odebrecht Oleo e Gas S.A., DrillCo Holding Lux S.A., Foresea Holding S.A., Contrarian Capital Management, LLC, and Joshua Weisser, alleges as follows:

**NATURE OF THE ACTION**

1.    Plaintiff, Eugene Davis ("Plaintiff" or "Davis"), brings this action against defendants ODN I GmbH, Odebrecht Drilling Norbe Six GmbH, ODN Tay IV GmbH, Odebrecht Drilling Norbe Eight GmbH, and Odebrecht Drilling Norbe Nine GmbH (together, the "Odebrecht

1

5522656

Defendants"), DrillCo Holding Lux S.A. ("DrillCo"), and Foresea Holding S.A. ("Foresea"; together with Drillco, the "Successor Entities") for breach of contract, against the Odebrecht Defendants, Odebrecht Offshore Drilling Finance Limited ("OODFL"), Odebrecht Drilling Norbe VIII/IX Ltd. ("VIII/IX"), and Ocyan S.A. f/k/a Odebrecht Oleo e Gas S.A. ("Ocyan"; together with OODFL, VIII/IX, and the Odebrecht Defendants, the "OOG Defendants") and the Successor Entities for breach of the duty of good faith and fair dealing, and against Contrarian Capital Management, LLC ("Contrarian") and Joshua Weisser ("Weisser"; together with Contrarian, the "Investor Defendants") for tortious interference with contractual relations.

2. In 2017, pursuant to a written agreement (the "Agreement"), Davis was hired by the OOG Defendants to act as the Creditor Representative, as defined in the Agreement, in connection with certain indentures and notes issued and/or guaranteed by the OOG Defendants.

3. Pursuant to the Agreement, Davis was entitled to be paid an Incentive Fee, as defined in the Agreement, if there was a Principal Reduction, as defined in the Agreement, of any principal amount owed under those notes.

4. The work performed by Davis while Creditor Representative directly led to a Principal Reduction, which entitled Davis to payment of an Incentive Fee, as defined in the Agreement.

5. Upon information and belief, the Investor Defendants wrongfully caused the Odebrecht Defendants to refuse to pay Davis the Incentive Fee and the OOG Defendants to terminate Davis as Creditor Representative. Such termination was motivated by a desire to avoid paying Davis the Incentive Fee when a Principal Reduction occurred.

6. The Odebrecht Defendants have also failed to reimburse Davis for certain fees and expenses incurred related to the negotiation, performance and enforcement of the Agreement in

breach of their obligation to do so.

## THE PARTIES

7. At all relevant times, Davis was a citizen and resident of the State of New Jersey.

8. Upon information and belief, at all relevant times, ODN I GmbH was an entity organized and existing under the laws of Austria.

9. Upon information and belief, at all relevant times, Odebrecht Drilling Norbe Six GmbH was an entity organized and existing under the laws of Austria.

10. Upon information and belief, at all relevant times, ODN Tay IV GmbH was an entity organized and existing under the laws of Austria.

11. Upon information and belief, at all relevant times, Odebrecht Drilling Norbe Eight GmbH was an entity organized and existing under the laws of Austria.

12. Upon information and belief, at all relevant times, Odebrecht Drilling Norbe Nine GmbH was an entity organized and existing under the laws of Austria.

13. Upon information and belief, at all relevant times, Odebrecht Offshore Drilling Finance Limited was an entity organized and existing under the laws of the Cayman Islands.

14. Upon information and belief, at all relevant times, Odebrecht Drilling Norbe VIII/IX Ltd. was an entity organized and existing under the laws of the Cayman Islands.

15. Upon information and belief, at all relevant times, Ocyan was an entity organized and existing under the laws of Brazil.

16. Upon information and belief, at all relevant times, DrillCo ws an entity organized and existing under the laws of the Grand Duchy of Luxembourg.

17. Upon information and belief, at all relevant times, Foresea was an entity organized and existing under the laws of Grand Duchy of Luxembourg.

18. Upon information and belief, at all relevant times, Contrarian was an entity

3

organized and existing under the laws of Delaware.

19. Upon information and belief, at all relevant times, Weisser was a citizen and resident of the State of New York.

## **JURISDICTION & VENUE**

20. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and complete diversity of citizenship exists between the Plaintiff and each of the Defendants.

21. The Defendants are subject to personal jurisdiction in this Court pursuant to CPLR §§ 301 and 302 as the misconduct complained of herein occurred within the State of New York and, upon information and belief, Defendants regularly transact business and/or reside within the State. In addition, the OOG Defendants and the Successor Entities, as successors to the OOG Defendants' rights and obligations, consented to personal jurisdiction in this judicial district under the Agreement, which provides that "each Party hereby irrevocably consents and agrees that any claims or disputes between or among the parties hereto arising out of or related to this Agreement (whether based upon contract, tort or otherwise) shall be brought and maintained in any federal or state court of competent jurisdiction sitting in the county of New York in the state of New York or in the United States District Court for the Southern District of New York, which courts shall have jurisdiction over the adjudication of such matters, and agrees to venue in such courts. Each party further irrevocably submits and consents in advance exclusively to such jurisdiction and venue in any action or suit commenced in any such courts, and hereby waives in all respects any claim or objection which it may have based upon lack of personal jurisdiction, improper venue or forum non conveniens."

22. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) and (3)

because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, Defendants are subject to personal jurisdiction in this judicial district, and the OOG Defendants and the Successor Entities, as successors to the OOG Defendants' rights and obligations, consented to venue in this district under the Agreement.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

23. Upon information and belief, Ocyan was, at all relevant times, the oil and gas division of the Brazilian conglomerate Odebrecht.

24. Upon information and belief, between 2005 and 2016, directly and through special purpose entities and joint ventures, Ocyan entered into contracts with Petrobras, the Brazilian state-owned oil company, for, among other things, oil drilling, production, and other specialized services.

25. Upon information and belief, the Odebrecht Defendants are special purpose entities that were established by Ocyan for the purpose of contracts for specialized services.

26. Upon information and belief, to fund the work of, among other entities, the Odebrecht Defendants, a series of syndicated loans were entered into and bonds were issued.

27. Upon information and belief, in 2017, the debt associated with these loans and bonds was extrajudicially reorganized under plans (the "Plans") pursuant to Brazilian bankruptcy law (the "2017 Brazilian Reorganization").

28. The 2017 Brazilian Reorganization was then effectuated, in part, through a Chapter 15 filing in the United States Bankruptcy Court for the Southern District of New York.

29. Following and in connection with the 2017 Brazilian Reorganization, certain indentures (the "Indentures") were signed by the OOG Defendants as issuers and guarantors.

30. By the written Agreement, dated December 22, 2017, Davis agreed with the OOG

5

Defendants to serve as the Creditor Representative, as defined in the Agreement, under the Plans and Indentures.

31. Upon information and belief, Davis was retained to serve as Creditor Representative based on his 40-plus years' experience in the oil and gas business.

32. Pursuant to the Agreement and the Indentures, Davis was responsible for, *inter alia*, approving annual budgets, certain affiliate transactions and other matters, taking into account the interests of the Holders and the Projects (defined in the Indentures as the chartering and operation of the drilling units and related facilities).

33. In addition to a monthly fee to be paid to Davis under the Agreement, Davis was entitled to, among other things, payment by the Odebrecht Defendants (or on their behalf by affiliates) of an incentive fee (the "Incentive Fee") to be calculated pursuant to specified formulas if there was a reduction of the principal amount(s) owed under specific notes issued under the Indentures (a "Principal Reduction"), and reimbursement of all fees and expenses related to the negotiation, performance and enforcement of the Agreement, including, without limitation, fees and expenses incurred by or with his legal counsel "in connection with any fee dispute and collection."

34. Each of the Odebrecht Defendants were and remain jointly and severally liable to Davis for all payments and reimbursements owed to him under the Agreement.

35. Upon information and belief, the assets, liabilities and obligations of the OOG Defendants were transferred to Drillco and Foresea pursuant to another restructuring plan effectuated in 2023 with the approval of the United States Bankruptcy Court for the Southern District of New York. Upon information and belief, as a result of the restructuring, Drillco and Foresea assumed, and are therefore liable for, any and all fees and obligations owed to Davis under

the Agreement.

36.     At all relevant times, Davis performed all of his duties as Creditor Representative. Among other things, as Creditor Representative, Davis, working with Ocyan management, played a key role during a world-wide depression in the oil drilling industry in restoring the OOG Defendants to financial health, which permitted payment of the Tranche 1 debt, as identified in the Agreement, and a related Principal Reduction on the Tranche 2 debt, as also identified in the Agreement.

37.     Davis undertook his duties on the heels of an Ocyan restructuring. The entire drilling industry was in a severe depression during the entire term of his engagement — the vast majority of Ocyan's main competitors worldwide went through at least one bankruptcy and in many cases two,

38.     During this time period, there was an oversupply of rigs. Oil and gas prices created disincentives to offshore drilling that exacerbated the crisis. Petrobras—effectively Ocyan's only customer—had blacklisted Ocyan for safety and operational breaches and was both withholding payments on then-operating rigs and would not permit hiring of Ocyan for future business.

39.     Davis, working with Ocyan's management, was instrumental in putting the Ocyan drilling unit subsidiaries on their financial feet and establishing the contracts for their drilling rigs that ultimately enabled Ocyan to pay the Tranche 1 debt. Davis, in close coordination with management, assured Ocyan's return to viability by bringing his decades of experience in the international oil and gas business to the design and implementation of safety and downtime improvement programs. These programs stabilized Ocyan's business, enabled it to collect its withheld fees from Petrobras, and made Ocyan a serious contender for new business from Petrobas and others.

40. Keeping Ocyan alive in the years immediately after 2017 enabled it to outlive the drilling business depression, survive into the current period of industry prosperity and pay off the Tranche 1 debt. Had Ocyan sunk into the liquidation that loomed when Davis came on, there would have been no value with which to restructure the Tranche 2 debt. The revival of Ocyan's business that Davis was critical in making possible inevitably led to the Principal Reduction of Tranche 2 debt, triggering Davis's right to the Incentive Fee.

41. With the Odebrecht Defendants' knowledge and consent, Davis's actions as Creditor Representative, some of which are enumerated below, played a critical role in ensuring that the Principal Reduction of the Tranche 2 debt could occur.

42. Davis established a strong working relationship with Ocyan management. He was accepted by Ocyan management and participated as part of its management team, thereby helping the to ensure that the business succeeded.

43. Davis played a critical role in designing and implementing a plan to permit Ocyan to survive.

44. Davis, working with management, supervised Ocyan's execution of that plan, capital expenditures and operating expenditures, keeping Ocyan in compliance with the Indentures, including servicing the Tranche 1 debt.

45. Until prevented by the Covid-19 pandemic, Davis personally visited Brazil several times a year. When not in Brazil, Davis participated in regular video and conference calls with management, and received and reviewed daily and weekly operational and safety reports. He monitored Ocyan activity, while negotiating and revising budgets.

46. Davis helped Ocyan with the difficult task of getting off of Petrobas's blacklist and onto bid lists. He participated in and advised on the preparation and negotiation of dozens of

complicated bidding packages for Ocyan's drilling units, continually revising and negotiating bids in competition with competitors often offering better equipment at big discounts.

47. Davis's efforts resulted in re-signing the Norbe VI drilling rig in time to meet Tranche 1 obligations, the re-contracting of the Norbe VIII and IX rigs (without which payment of the Tranche 1 debt would not have occurred), and the re-contracting of ODN 1 and 2 rigs, which process was at an advanced stage when Davis was terminated. Davis also consulted with Ocyan management on the reconfiguration of Norbe VI to expand opportunities for subsequent leases.

48. By the summer of 2020, recognizing that the Tranche 1 debt was going to be paid, Ocyan management, with Davis's approval and assistance, retained the financial advisory and asset management firm Lazard as a consultant to assist Ocyan in preparing a proposal for the restructuring of the Tranche 2 debt, which included a Principal Reduction.

49. In 2020, Ocyan and its representatives shared a proposal for the restructuring of the Tranche 2 debt, which included a Principal Reduction, prepared with Lazard's assistance with the beneficial owners of the notes issued under the Indentures (the "Noteholders"), including entities organized and managed by Contrarian, Pimco and AIG.

50. The Noteholders, who expressly praised Davis for his key role in getting Ocyan to this stage, also retained a financial advisor in or about 2020 to assist them in negotiating the restructuring of the Tranche 2 debt that was going to, and did in fact, occur.

51. In short, Davis's vigorous and effective activities ensured that Ocyan's Tranche 1 debt would be retired on schedule, which in turn assured a Principal Reduction of the Tranche 2 debt, entitling Davis to the Incentive Fee under the Agreement.

52. As a result of Davis's work, a Principal Reduction occurred in connection with the 2023 restructuring of Ocyan's debt.

5522656

53. The OOG Defendants were, at all relevant times, aware of Davis's activities and the critical role he played in the restructuring of the Tranche 2 debt.

54. The Investor Defendants and the Noteholders were, at all relevant times, aware of Davis's activities and the critical role he played in the restructuring of the Tranche 2 debt.

55. In or about the Spring of 2021, knowing that Davis's work had placed Ocyan in a solid position to be able to pay the Tranche 1 debt, which would assure a Principal Reduction of the Tranche 2 debt and entitle Davis to payment of the Incentive Fee, Weisser on behalf of the Investor Defendants and Noteholders threatened Davis that he would be terminated as Creditor Representative if he did not agree to give up his right to the Incentive Fee.

56. Davis rejected Weisser's threat.

57. Over the next few months, Weisser and other representatives of Contrarian Management and the other Noteholders repeated Weisser's threat, which Davis again rejected.

58. Davis was kept on as Creditor Representative for several months after being threatened with dismissal in an effort to coerce his voluntary relinquishment of the Incentive Fee.

59. Not coincidentally, during that time, Davis finalized the re-contracting of Ocyan's drilling units, which helped ensure that the Tranche 2 restructuring would occur.

60. The Investor Defendants and Noteholders caused the OOG Defendants to terminate Davis as Creditor Representative in an effort to avoid payment of the Incentive Fee.

61. Following his termination, Ocyan management, which supported Davis continuing in his role as Creditor Representative, apologized to Davis for his termination. At the time that Davis was discharged as Creditor Representative, his work in restoring Ocyan's drilling unit subsidiaries to financial health had virtually ensured a Principal Reduction.

62. Based on the Principal Reduction amount and the formulas set forth in the

Agreement, Davis was and is accordingly entitled to the Incentive Fee equal to not less than $4,457,713.26, plus interest.

63. Notwithstanding numerous demands for payment of the Incentive Fee, Davis has not been paid the Incentive Fee.

64. Upon information and belief, at all relevant times, the Investor Defendants possessed an interest in and/or managed entities that possessed an interest in the notes issued and/or guaranteed by the OOG Defendants pursuant to the Indentures.

65. Upon information and belief, at all relevant times, Weisser acted as Contrarian's representative in connection with communications related to the notes issued and/or guaranteed by OOG Defendants.

66. Upon information and belief, the Investor Defendants without justification caused the OOG Defendants to terminate Davis as Creditor Representative in order to deprive him of the Incentive Fee to which he was entitled under the Agreement.

67. Upon information and belief, the Investor Defendants without justification caused the Odebrecht Defendants to not pay the Incentive Fee.

68. Since in or about 2021, Davis has incurred fees and expenses, including attorneys' fees, related to his efforts to enforce the Agreement and to ensure that he receives payments to which he is entitled under the Agreement, including, without limitation, by appearing in the Chapter 15 Proceedings in the United States Bankruptcy Court for the Southern District of New York, Case No. 23-10557-dsj (the "Chapter 15 Proceedings"), commenced on April 11, 2023 by many of the OOG Defendants, in a *successful effort* to ensure that any claims possessed by Davis against the Petitioners would not be discharged by the Chapter 15 Proceedings.

69. As a result of action taken by Davis and his attorneys, an order was issued in the

Chapter 15 Proceedings, which provided, *inter alia*, that "any claims or rights asserted by Eugene Davis under or in connection with that certain engagement letter, dated as of December 12, 2017 . . . are not subject to the [Restructuring] Plan (including, for the avoidance of doubt, the Releases contained therein) or otherwise impacted by the [Restructuring] Plan or this Order (including, for the avoidance of doubt, any stay, pursuant to §§ 362(a) and 1520(a)(1) of the Bankruptcy Code, of Mr. Davis's right to commence an action to enforce his claims or rights under the Engagement Letter), and all parties reserve all of their rights and defenses with respect to any such asserted claims or rights."

70. In 2021 (the "2021 Request"), Davis requested, pursuant to the Agreement, repayment from the OOG Defendants of fees and expenses, including attorneys' fees, incurred by Davis related to the negotiation, performance, and enforcement of the Agreement.

71. In 2021, Davis received such repayment in response to the 2021 Request.

72. On or about April 21, 2023 (the "April 2023 Request"), Davis requested, pursuant to the Agreement, repayment of $41,264.36 from the OOG Defendants for fees and expenses, including attorneys' fees, incurred by Davis related to the negotiation, performance, and enforcement of the Agreement.

73. No payment or other response has been received to the April 2023 Request.

74. On or about July 31, 2023 (the "July 2023 Request"), Davis requested, pursuant to the Agreement, repayment of $114,995.15 from the OOG Defendants for fees and expenses, including attorneys' fees, incurred by Davis related to the negotiation, performance, and enforcement of the Agreement, which, among other things, included amounts requested in the April 2023 Request and related to the Chapter 15 Proceedings.

75. No payment has been received in response to the July 2023 Request.

76. In February, 2024 (the "February 2024 Request"), Davis requested, pursuant to the Agreement, repayment of $158,611.53 from the OOG Defendants for fees and expenses, including attorneys' fees, incurred by Davis related to the negotiation, performance, and enforcement of the Agreement, which, among other things, included amounts requested in the April 2023 Request and the July 2023 Request.

77. No payment has been received in response to the February 2024 Request.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Breach of Contract**
**(Against Odebrecht Defendants, DrillCo, and ForeSea)**

78. Davis repeats and realleges the allegations set forth in paragraphs 1 through 77 as if fully set forth herein.

79. The Agreement is a valid and enforceable contract.

80. Davis performed all of his obligations under the Agreement.

81. Pursuant to the Agreement, Davis is entitled to an Incentive Fee of not less than $4,457,713.26, plus interest.

82. In breach of their obligations under the Agreement, the Odebrecht Defendants, DrillCo, and ForeSea have not paid Davis the Incentive Fee.

83. As result of the foregoing, Davis has been damaged in the amount of not less than $4,457,713.26, plus interest, along with the fees and expenses, including attorneys' fees, incurred in connection with this action and seeking to enforce his rights under the Agreement.

**AS AND FOR A SECOND CAUSE OF ACTION**
**In the Alternative to the First Cause of Action**
**Breach of the Duty of Good Faith and Fair Dealing**
**(Against OOG Defendants, DrillCo, and ForeSea)**

84. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 77 as if fully set forth herein.

5522656

85. Davis performed all of his obligations under the Agreement.

86. On several occasions before September 28, 2021, Davis was threatened with dismissal as Creditor Representative if he did not agree to relinquish his right to an Incentive Fee in the event of a Principal Reduction.

87. Both before and after being threatened with dismissal, Davis's actions directly led to payment of the Tranche 1 debt.

88. Davis's work directly led to a Principal Reduction.

89. By letter dated September 28, 2021, the OOG Defendants notified Davis of his termination as Creditor Representative.

90. Davis was terminated in an effort to avoid paying him the Incentive Fee to which he was entitled under the Agreement.

91. Davis's termination as Creditor Representative was in breach of the OOG Defendants' collective duty of good faith and fair dealing.

92. The OOG Defendants, DrillCo, and Foresea, have not paid Davis the Incentive Fee.

93. By terminating Davis as Creditor Representative after receiving the benefits of his performance under the Agreement, the OOG Defendants sought to deprive Davis of a substantial and material benefit of the Agreement, namely the Incentive Fee.

94. As result of the foregoing, Davis has been damaged in the amount of not less than $4,457,713.26, plus interest, along with the fees and expenses, including attorneys' fees, incurred in connection with this action and seeking to enforce his rights under the Agreement.

## AS AND FOR A THIRD CAUSE OF ACTION
### Tortious Interference with Contract
### (Against Investor Defendants)

95. Davis repeats and realleges the allegations set forth in paragraphs 1 through 83 as if fully set forth herein.

96. The Agreement between Davis and the OOG Defendants, including the Odebrecht Defendants, is a valid and enforceable contract.

97. The Investor Defendants were aware of the terms of the Agreement, including Davis's right to an Incentive Payment in the event of a Principal Reduction.

98. Pursuant to the Agreement, Davis is entitled to an Incentive Fee of not less than $4,457,713.26, plus interest.

99. In breach of their obligations under the Agreement, the Odebrecht Defendants, DrillCo, and ForeSea have not paid Davis the Incentive Fee.

100. The Investor Defendants tortiously interfered with the Agreement by wrongfully causing the OOG Defendants to not pay Davis the Incentive Fee without justification.

101. Upon information and belief, but for the Investor Defendants' interference without justification with the Odebrecht Defendants' performance of its obligations under the Agreement, the Odebrecht Defendants, DrillCo, and ForeSea would not have breached the Agreement by not paying the Incentive Fee.

102. As result of the foregoing, Davis has been damaged in the amount of not less than $4,457,713.26, plus interest, along with the fees and expenses, including attorneys' fees, incurred in connection with this action and seeking to enforce his rights under the Agreement.

## AS AND FOR A FOURTH CAUSE OF ACTION
### In the Alternative to the Third Cause of Action
### Tortious Interference with Contract
### (Against Investor Defendants)

103. Davis repeats and realleges the allegations set forth in paragraphs 1 through 77 and 87 through 94 as if fully set forth herein.

104. The Agreement between Davis and the OOG Defendants was a valid contract.

105. The Investor Defendants were aware of the terms of the Agreement, including Davis's right to an Incentive Payment in the event of a Principal Reduction.

106. On several occasions in the months before September 28, 2021, the Investor Defendants threatened Davis with dismissal as Creditor Representative if he did not agree to modify the Agreement to relinquish his right to an Incentive Fee in the event of a Principal Reduction.

107. Davis refused to relinquish his right to an Incentive Fee in the event of a Principal Reduction.

108. Both before and after being threatened with dismissal, Davis's work directly led to the payment of the Tranche 1 debt.

109. Davis's work as Creditor Representative directly led to a Principal Reduction.

110. To deprive Davis of the Incentive Fee, the Investor Defendants caused without justification the OOG Defendants to terminate Davis as Creditor Representative in order to avoid payment of the Incentive Fee, in breach of their collective duty of good faith and fair dealing.

111. As result of the foregoing, Davis has been damaged in the amount of not less than $4,457,713.26, plus interest, along with the fees and expenses, including attorneys' fees, incurred in connection with this action and seeking to enforce his rights under the Agreement.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Breach of Contract
**(Against OOG Defendants, DrillCo, and ForeSea)**

112. Davis repeats and realleges the allegations set forth in paragraphs 1 through 77 as if fully set forth herein.

113. The Agreement is a valid and binding contract.

114. Davis performed all of his obligations under the Agreement.

115. Pursuant to the Agreement, Davis is entitled to reimbursement of his fees and expenses, including attorneys' fees, incurred by Davis related to the negotiation, performance, and enforcement of the Agreement.

116. Davis has not been reimbursed for fees and expense incurred by Davis related to the negotiation, performance, and enforcement of the Agreement totaling not less than $160,000.

117. As result of the foregoing, Davis has been damaged in the amount of not less than $160,000, plus interest, along with the fees and expenses, including attorneys' fees, incurred in connection with this action and seeking to enforce his rights under the Agreement.

**WHEREFORE**, Plaintiff prays for judgment of this Court as follows:

1. On the First and Third Causes of Action against the OOG Defendants, the Successor Entities, and the Investor Defendants, jointly and severally in the amount of $4,457,713.26, plus interest, along with the fees and expenses, including attorneys' fees, incurred in connection with this action and seeking to enforce his rights under the Agreement;

2. On the Second and Fourth Causes of Action against the OOG Defendants, the Successor Entities, and the Investor Defendants, jointly and severally in the amount of $4,457,713.26, plus interest, along with the fees and expenses, including attorneys' fees, incurred in connection with this action and seeking to enforce his rights under the Agreement;

3.     On the Fifth Cause of Action against the OOG Defendants and the Successor Entities, jointly and severally, in the amount of not less than $160,000, plus interest, along with the fees and expenses, including attorneys' fees, incurred in connection with this action and seeking to enforce his rights under the Agreement; and

4.     Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       February 26, 2024

           MOSES & SINGER LLP
           *Attorneys for Plaintiff*


By:  */s/Philippe Zimmerman*
     Philippe Zimmerman
     Zaid Shukri
405 Lexington Avenue, 12th Floor
New York, New York 10174
Tel: (212) 554-7800